UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                        :

ASSET CO IM REST, LLC, *et al.*,          :
                                          :

                 Plaintiffs,      :

                                          :              23 Civ. 9691 (JPC)

             -v-                :

                                          :              OPINION AND

GERALD "JERRY" KATZOFF, *et al.*,    :              ORDER

                                          :

                 Defendants.      :

                                          :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This case concerns a long-running dispute involving the prominent Il Mulino chain of Italian restaurants. Plaintiffs Asset Co IM Rest, LLC ("IM Asset Co"), Il Mulino Joint Ventures, LLC ("IM Joint Ventures"), and Receivables IM Rest, LLC ("Receivables IM") allege that Defendants Gerald "Jerry" Katzoff ("Katzoff"), IMNY GS, LLC ("IMNY GS"), West 3rd Holdings, LLC ("W3H"), West 3rd Products, LLC ("W3P"), IM LLC-I ("IM-I"), and GFB Restaurant Corp. ("GFB") engaged in unlawful use of Il Mulino's intellectual property, among other acts of malfeasance.

      On January 16, 2024, the Court granted in part Plaintiffs' request for injunctive relief as to alleged trade dress violations at the Il Giglio Tribeca restaurant located at 361 Greenwich Street ("Il Giglio Tribeca"). *See Asset Co IM Rest LLC v. Katzoff*, No. 23 Civ. 9691 (JPC), 2024 WL 167333 (S.D.N.Y. Jan. 16, 2024). Now, Defendants separately move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(e). For the following reasons, the Court grants GFB's and W3H's motions in part, but otherwise denies Defendants' motions.

# I. Background[1]

## A.    Facts

The original Il Mulino restaurant, located at 86 West 3rd Street in Greenwich Village ("Il Mulino West 3rd Street"), was founded in 1981 by brothers Gino and Fernando Masci.  Compl. ¶ 32.  For the next two decades, the Masci brothers successfully operated the restaurant under the ownership of Defendant GFB, which at the time was their company.  *Id.* ¶ 33.  Il Mulino's success was driven, in part, by its unique, proprietary recipes and preparations for Abruzzese Italian food like its spicy focaccia toast, the brown sauce used in many of its dishes, its Pollo Parmigiana, the in-kitchen partial preparation and tableside finish of certain dishes including its branzino, and the zabaglione used in some of its desserts.  *Id.* ¶ 35 & n.6.  Il Mulino also developed proprietary processes, formulas, trade secrets, and know-how relating to its restaurant operations and service methods.  *Id.* ¶ 36.  During the time when they were operating Il Mulino West 3rd Street, the Masci brothers allowed certain family members to open a "sister restaurant" in Tribeca under the name "Il Giglio," which closed in 2015.  *Id.* ¶ 34.

In 2002, Defendant Katzoff and his then-business partners acquired a majority equity interest in GFB and Il Mulino West 3rd Street, as well as complete ownership of Il Mulino's

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Plaintiffs' Complaint, Dkt. 1 ("Compl.").  *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) ("When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (explaining that "[i]n a motion to dismiss pursuant to [Rule] 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both," and that when "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" (citation and internal quotation marks omitted)); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 508 (S.D.N.Y. 2021) ("Unlike at the preliminary injunction stage, for purposes of a motion to dismiss, a Court must accept all well-pleaded factual allegations in the [] Complaint as true and draw all reasonable inferences in Plaintiffs' favor.").

intellectual property, including its trademarks, trade dress, trade secrets, recipes, proprietary processes and formulas, and know-how relating to Il Mulino (the "Il Mulino IP"). *Id.* ¶¶ 2, 38. Katzoff and his partners also formed a new entity, Defendant IM-I, which became the beneficial owner of the Il Mulino IP. *Id.* ¶ 39.

In 2004, Katzoff and his partners endeavored to expand the Il Mulino brand, including by attracting outside investors to fund the expansion. *Id.* ¶ 40. To accomplish this goal, they planned to grant licenses to third parties to open new Il Mulino-branded restaurants and to use the Il Mulino IP. *Id.* ¶ 41. As part of this plan, the group formed Il Mulino USA ("IM USA") and its majority member, IM LLC-III ("IM-III"). *Id.* IM-I entered into a valid, perpetual, and exclusive intellectual property license (the "IP License") with IM-III; the same day, IM-III assigned the IP License to IM USA, and thereby granted IM USA an exclusive license to use and sublicense all of the Il Mulino IP. *Id.* ¶¶ 2, 42 & n.9. IM USA and its subsidiaries, in turn, sublicensed the Il Mulino IP in various efforts to expand the Il Mulino brand into different restaurant concepts. *Id.* ¶¶ 49-50.

To facilitate the opening of Il Mulino-branded restaurants, Plaintiff IM Joint Ventures was formed in 2017 as a wholly owned subsidiary of IM USA. *Id.* ¶ 51. Defendant IMNY GS was also formed around that time, originally as a wholly owned subsidiary of IM Joint Ventures and solely for the purpose of opening, owning, and operating a restaurant named "Il Mulino Tribeca," located at 361 Greenwich Street in Tribeca. *Id.* ¶¶ 4, 52. IMNY GS obtained from IM USA a sublicense to use the Il Mulino IP at Il Mulino Tribeca (the "Il Mulino Tribeca IP Sublicense"), purchased more than $240,000 of property for use at the restaurant, and designed and decorated the restaurant in an Il Mulino style. *Id.* ¶¶ 53-62. IMNY GS, through IM Joint Ventures, entered into an agreement with non-party J.B. IM, LLC ("JBIM"), a company which Katzoff controls, to manage Il Mulino Tribeca. *Id.* ¶¶ 5, 63.

In July 2018, Il Mulino Tribeca opened to the public.  *Id.* ¶ 66.  Il Mulino Tribeca used proprietary Il Mulino recipes, menus, and other aspects of the Il Mulino IP through the Il Mulino Tribeca IP Sublicense.  *Id.* ¶ 67.  Il Mulino Tribeca was "routinely recognized" for its affiliation with the Il Mulino brand and for its offering of Il Mulino recipes and trade dress.  *Id.* ¶ 68.  To address inter-company debts and other financial issues, IMNY GS entered into a promissory note with IM USA (the "IMNY GS Note") on May 28, 2020 (effective as of September 25, 2019).  *Id.* ¶¶ 10 n.2, 70.  Under the terms of the IMNY GS Note, IMNY GS promised to repay a principal sum of $602,905, plus interest.  *Id.*  IM USA later assigned the IMNY GS Note to Plaintiff Receivables IM.  *Id.* ¶¶ 70, 75.

On July 28, 2020, IM USA and several of its affiliates filed voluntary petitions for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *Id.* ¶ 71; *see In re KG Winddown*, No. 20 Bk. 11723 (MG) (S.D.N.Y. Bankr.).  On December 24, 2020, IM USA and its Chapter 11 affiliates sold and transferred all of the assets and goodwill associated with their business to Plaintiffs and Plaintiffs' affiliates.  Compl. ¶¶ 72-75.  The bankruptcy court allowed GFB to continue using the Il Mulino IP for certain purposes pursuant to a pre-existing license (the "GFB License").  *Id.* ¶ 79.

After the bankruptcy proceedings, Katzoff retained indirect ownership and managerial control of IM-I and GFB.  *Id.* ¶ 76.  Katzoff also retained partial ownership and complete control of JBIM, allowing Katzoff to continue serving as the Manager of IMNY GS and, through it, Il Mulino Tribeca.  *Id.* ¶ 80.  In the spring of 2023, Katzoff decided to close Il Mulino Tribeca.  *Id.* ¶ 82.

Shortly after the closure, Plaintiffs began to suspect that Katzoff intended to open a new Italian restaurant in the same space as Il Mulino Tribeca.  *Id.* ¶ 83.  Plaintiff IM Asset Co, which

currently owns the IP License following an Asset Purchase Agreement entered as part of the IM USA bankruptcy, *id.* ¶ 43, was particularly concerned given Katzoff's purported prior breaches of obligations regarding the Il Mulino IP and sent Katzoff a notice and demand letter, *id.* ¶ 84. That letter cautioned Katzoff about the improper use of the Il Mulino IP and requested confirmation that Katzoff's new restaurant would not use the Il Mulino IP. *Id.* ¶¶ 85-90. Katzoff responded that "a deal is being made with the land lord [sic] to take back the restaurant and all its assets for the satisfaction of [] back rent" and that after "a new liquor license is issued to a new tenant . . . [that] tenant will take over the space." *Id.* ¶ 91 (alterations in original). Plaintiffs allege that based on this response, they understood that "Katzoff recognized he did not have any rights to use the Il Mulino IP at a new restaurant under his ownership after Il Mulino Tribeca closed, and would instead transfer the restaurant space to a new tenant operating an entirely new and distinct concept." *Id.* ¶ 92. Yet, in August 2023, Plaintiffs learned that the new tenant for the space would be Katzoff himself, leading IM Asset Co to send two more demand letters to Katzoff, both of which were ignored. *Id.* ¶¶ 93-94.

The new restaurant is named "Il Giglio Tribeca," and is owned and operated by Defendant W3H, with Defendant W3P also involved in the operation of the restaurant. *Id.* ¶¶ 25-26, 96. IMNY GS, acting at Katzoff's direction, transferred all existing Il Mulino Tribeca personal property to W3H and W3P. *Id.* ¶ 261. Plaintiffs' Complaint alleges that Il Giglio Tribeca infringes on the Il Mulino IP in a number of ways that are discussed in detail in the Court's decision on Plaintiffs' motion for a preliminary injunction. *See Asset Co IM Rest*, 2024 WL 167333 at *4-16.

The GFB License, which authorized GFB to continue using the Il Mulino IP solely for operations at Il Mulino West Third Street, expired on September 23, 2022. Compl. ¶¶ 147-50. The GFB License did not provide for any further extension. *Id.* ¶ 79. The parties agreed that upon

termination of the GFB License, "GFB would 'immediately stop the use of the Il Mulino trade name and mark in any and all forms, including signs, menus, advertisements, logos, etc.,'" and that "'[a]ny such use or exploitation following the termination of this Agreement shall be deemed infringement.'" *Id.* ¶ 151 (alterations adopted; quoting the terms of the GFB License). Beginning in the months prior to the GFB License's expiry, IM Asset Co made efforts to negotiate a sublicense for continued use of the Il Mulino IP at Il Mulino West 3rd Street, but these attempts were "either ignored or rebuffed." *Id.* ¶¶ 153-154. Instead, "Defendants have continued to use the Il Mulino IP at Il Mulino West 3rd Street without authorization," including by "operating under and using the IL MULINO Mark, and using Il Mulino trade dress, recipes, know-how, and other aspects of the Il Mulino IP." *Id.* ¶ 155.

**B.    Procedural History**

Plaintiffs filed their Complaint on November 2, 2023. Dkt. 1. The Complaint brings fourteen causes of action, which are outlined in the following table for ease of reference:

| Count | Plaintiff(s) | Defendant(s) | Cause | Statute | Compl. |
|---|---|---|---|---|---|
| 1 | IM Asset Co, IM Joint Ventures | Katzoff, W3H, W3P | Federal Unfair Competition and False Designation of Origin | 15 U.S.C. § 1125(a) | ¶¶ 158-168 |
| 2 | IM Asset Co | Katzoff, W3H, W3P | Federal Trademark Infringement | 15 U.S.C. § 1114(1)(a) | ¶¶ 169-176 |
| 3 | IM Asset Co | Katzoff, GFB | Federal Unfair Competition and False Designation of Origin | 15 U.S.C. § 1125(a) | ¶¶ 177-187 |
| 4 | IM Asset Co | Katzoff, GFB | Federal Trademark Infringement | 15 U.S.C. § 1114(1)(a) | ¶¶ 188-196 |
| 5 | IM Asset Co | Katzoff, W3H, W3P, IM-I, GFB | Infringement of the Il Mulino IP Licensed in the IP License | N/A | ¶¶ 197-204 |
| 6 | IM Asset Co | IM-I | Breach of IP License | N/A | ¶¶ 205-215 |
| 7 | IM Asset Co, IM Joint Ventures | All Defendants | Common Law Unfair Competition: Palming Off | N/A | ¶¶ 216-228 |
| 8 | IM Asset Co, IM Joint Ventures | All Defendants | Common Law Unfair Competition: Misappropriation | N/A | ¶¶ 229-240 |
| 9 | IM Joint Ventures | Katzoff, W3H, W3P | Conversion | N/A | ¶¶ 241-247 |
| 10 | IM Joint Ventures | Katzoff, W3H, W3P | Unjust Enrichment | N/A | ¶¶ 248-255 |
| 11 | Receivables IM, IM Joint Ventures | Katzoff, W3H, W3P, IMNY GS | Voidable Transaction | N.Y. D.C.L. §§ 273, 274, 276 | ¶¶ 256-266 |
| 12 | IM Joint Ventures | Katzoff | Breach of Fiduciary Duty | N/A | ¶¶ 267-274 |
| 13 | IM Joint Ventures | Katzoff | Faithless Servant | N/A | ¶¶ 275-282 |
| 14 | Receivables IM | IMNY GS | Breach of Promissory Note | N/A | ¶¶ 283-292 |

Plaintiffs' Complaint seeks preliminary and permanent injunctive relief; an award of Defendants' profits realized by the operation of Il Giglio Tribeca and Il Mulino West 3rd Street following the expiration of the GFB License; a declaration that Defendants must sell the personal property from Il Mulino Tribeca or pay to IMNY GS a market rate for its acquisition; an order that Defendants must disgorge amounts by which Defendants were unjustly enriched by virtue of taking that personal property; an order that Katzoff must disgorge his compensation for managing Il Mulino Tribeca during the time when he violated his fiduciary duties or was otherwise disloyal; damages including punitive damages; pre- and post-judgment interest; attorneys' fees; and any other relief the Court deems proper. *See* Compl. at 68-69.

Plaintiffs moved for a preliminary injunction on their claims relating to operations at Il Giglio Tribeca on November 5, 2023. Dkt. 23. After concluding that Plaintiffs had established a likelihood of success on the merits regarding their Lanham Act trade dress claims, the Court granted the motion in part and preliminarily enjoined Defendants from using trade dress at Il Giglio Tribeca similar to that at Il Mulino Tribeca. *See Asset Co IM Rest*, 2024 WL 167333, at *18. The Court subsequently denied Defendants' motion to stay discovery pending the resolution of their anticipated motions to dismiss. *See* Dkt. 90.

On March 11, 2024, all six Defendants filed separate motions to dismiss the Complaint in whole or in part under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(e). *See* Dkts. 93, 94 ("GFB Motion"); Dkts. 95, 96 ("Katzoff Motion"); Dkts. 97, 98 ("IM-I Motion"); Dkts. 99, 100 ("IMNY GS Motion"); Dkts. 101, 102 ("W3H Motion"); Dkts. 103, 104 ("W3P Motion"). Plaintiffs filed an omnibus opposition brief on April 15, 2024, Dkt. 112 ("Opposition"), and Defendants filed a joint reply brief on May 3, 2024, Dkt. 115 ("Reply").

## II. Standards of Review

### A.    Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). While certain Defendants invoke Rule 12(b)(1) in their motions, they are not clear which counts they are seeking to dismiss on jurisdictional grounds and whether they are bringing a facial or factual challenge to the Court's subject matter jurisdiction. And indeed, their arguments as to the preclusive effect of the bankruptcy court's decision in *In re KG Winddown*, while at times presented in the context of a Rule 12(b)(1) motion, are more properly considered under Rule 12(b)(6) for failure to state a claim. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Similarly, as mentioned below, the Court construes Defendants' challenge to IM Asset Co's ability to bring a claim under 15 U.S.C. § 1114(1) as invoking Plaintiffs' statutory standing, not a jurisdictional challenge implicating Article III standing. *See infra* III.B.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. At the pleading stage, the "Court generally must accept the material factual allegations in the complaint as true" for purposes of analyzing a Rule 12(b)(1) motion. *S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009). Any ripeness challenge brought by W3P or any arguments focused on the preclusive effect of the bankruptcy court's decision, to the extent they are considered a subject matter jurisdiction challenge, are best construed as a facial challenge because those arguments are

"based solely on the allegations of the complaint or the complaint and exhibits attached to it."[2]
*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In evaluating a facial challenge,
a court's task "is to determine whether the [p]leading alleges facts that affirmatively and plausibly
suggest that the plaintiff has standing to sue." *Id.* (alterations and internal quotation marks
omitted). The plaintiff bears no evidentiary burden in refuting such a challenge, and a court
"draw[s] all reasonable inferences in favor of the plaintiff." *Id.* at 56-57 (internal quotation marks
omitted).

## B.    Rule 12(b)(6) Standard

In challenging the merits of certain causes of action in the Complaint, Defendants argue
that dismissal is required under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed
to state a claim upon which relief may be granted. To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise the
right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a motion to
dismiss, courts must "accept all factual allegations in the complaint as true and draw all reasonable

---

[2] Although the bankruptcy court's decision is not attached to the Complaint, the Complaint
incorporates the decision by reference and it is properly subject to judicial notice. *See Goel v.
Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (explaining that a court evaluating a motion to
dismiss may consider "documents appended to the complaint or incorporated in the complaint by
reference, and matters of which judicial notice may be taken" (alteration and internal quotation
marks omitted)); *Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (summary order)
(holding that taking judicial notice of decisions in related proceedings was not an abuse of
discretion because such documents were "self-authenticating, publicly available records"); Compl.
¶¶ 72, 78-79 (making clear, definite, and substantial references to the bankruptcy court's decision).

inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014) (alterations and internal quotation marks omitted).

C.    **Rule 12(e) Standard**

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions generally are disfavored because of their dilatory effect," and "the rule is designed to strike at unintelligibility rather than want of detail." *Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt.*, No. 99 Civ. 10656 (JGK), 2000 WL 1006257, at *6 (S.D.N.Y. June 19, 2000) (internal quotation marks omitted). "A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001) (internal quotation marks omitted).

### III.  Discussion

As indicated by the omnibus Opposition and Reply briefs filed in this matter, Defendants' motions to dismiss overlap significantly in content. Broadly speaking, Defendants' arguments fall into seven categories. First, *res judicata* bars Plaintiffs from asserting claims predicated on alleged infringement at Il Mulino West 3rd Street. Second, Plaintiffs lack statutory standing to bring their Lanham Act trademark infringement claims. Third, a claim against GFB and W3H has not been stated for their involvement in activities at Il Giglio Tribeca and Il Mulino West 3rd Street, respectively. Fourth, the claims against W3P are not facially ripe. Fifth, certain allegations concerning W3P's activities are insufficiently pleaded "upon information and belief." Sixth, the Court lacks supplemental jurisdiction over Plaintiffs' state law claims. Seventh, the Complaint is

impermissibly vague and thus must be re-pleaded under Rule 12(e).  The Court will address each in turn.

## A.    *Res Judicata*

Katzoff, GFB, and W3H argue that the doctrine of *res judicata* bars any claims relating to alleged infringement at Il Mulino West 3rd Street.  *See* Katzoff Motion at 4-8; GFB Motion at 4-8; W3H Motion at 4-6.  According to these Defendants, the decision of U.S. Bankruptcy Judge Martin Glenn in *In re KG Winddown, LLC*, 632 B.R. 448 (Bankr. S.D.N.Y. 2021), determined the scope of the IP License[3] and concluded that it did not encompass rights related to Il Mulino West 3rd Street.  These Defendants urge dismissal of Counts 3, 4, and 5, which all assert claims for infringement stemming from the use of the Il Mulino IP at Il Mulino West 3rd Street without a license, on *res judicata* grounds.

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  *Res judicata* bars a subsequent action when "1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same."  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks omitted).  "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action."  *Comput. Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997).

---

[3] In his decision, Judge Glenn refers to the IP License as the "IM-III License."  *See* Compl. ¶ 2; Opposition at 5 & n.3, 15-19; Reply at 7; *compare In re KG Winddown*, 632 B.R. at 461-62, *with* Compl. ¶¶ 42-44 & n.9.

Judge Glenn in *In re KG Winddown* decided the "central issue [of] whether the GFB License and the [IP] License conflict, or whether they can coexist." 632 B.R. at 459. He concluded that "the GFB License is valid and can coexist with the [IP] License," *id.*, interpreting the "exclusive" grant of rights in each license to limit the use of licensed property only to "certain purposes," *id.* at 473 (emphasis omitted). Namely, Judge Glenn held that the IP License's term "Restaurants" did not include Il Mulino West 3rd Street, and therefore that location "is not within the term[s]" of the IP License. *Id.* at 473-74.

Evaluating Judge Glenn's decision under the four elements of *res judicata*, this Court concludes the doctrine does not apply because the causes of action in this case are not the same as those that were before the bankruptcy court. In evaluating claim preclusion, district courts look to whether a party "brings new claims against the same defendant arising out of the same facts as an earlier unsuccessful cause of action." *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43 (2d Cir. 2013) (summary order). Specifically, "[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction [or] series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan*, 214 F.3d at 285 (internal quotation marks omitted). In this assessment, the underlying transaction "must be given a flexible, common-sense construction that recognizes the reality of the situation." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).

The Complaint alleges that the "GFB License expired by its terms at the end of 2022, and did not provide for any further extension. Plaintiffs have repeatedly raised Il Mulino West Third Street's continuing unlicensed use of the Il Mulino IP with Defendants." Compl. ¶ 79; *see also id.* ¶¶ 147-157 (advancing various allegations to support claims for infringement upon the expiration

of the GFB License in September 2022).  Plaintiffs argue that "*every* one of Plaintiffs' causes of action relating to Il Mulino West 3rd Street is based on unauthorized use at Il Mulino West 3rd Street happening *after* the GFB License's expiration," and therefore the opinion in *In re KG Winddown* is not preclusive because "the actual legal issues before Judge Glenn in the 2021 Opinion were whether IM-I's *prior, 2002* grant of a twenty-year license in the GFB License, and whether its later failure to disclose that GFB License to IM Asset Co or terminate it, breached the IP License."  Opposition at 17-18.

The Second Circuit has clearly stated that "[c]laims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by *res judicata* regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'"  *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003) (Sotomayor, J.).  Plaintiffs' claims could not have been brought in the prior action, as the decision in *In re KG Winddown* was published in August 2021 and the GFB License allegedly did not expire until over a year later, in September 2022.   "The conduct presently complained of was all subsequent to" Judge Glenn's decision, and therefore while the judgment in *In re KG Winddown* "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).  Judge Glenn also declined to pass on certain issues after that expiration date, adding further support to the conclusion of the inapplicability of claim preclusion in this case.  *See In re KG Winddown*, 632 B.R. at 461 n.11.  As Plaintiffs' claims for trademark infringement stem from infringing conduct which took place after the expiration of the GFB License, these claims are not barred under *res judicata*.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 502 (2d Cir.

14

2014) (holding claim preclusion inapplicable in a trademark infringement case where the "complaint is properly read . . . to assert liability based on *new*, post-settlement conduct").

Defendants insist that this timing distinction is irrelevant because Judge Glenn resolved the issue of the scope of the license, and therefore "Plaintiffs do not have standing to bring the infringement claims at all as the[y] do not possess the required ownership rights in the asserted marks."  Reply at 8; *see id.* (arguing that Plaintiffs' argument "ignores the issue that Plaintiffs cannot bring an action for infringement for rights that they do not have" (emphasis omitted)).  If anything, any argument relying on the preclusive effect of Judge Glenn's determination regarding the scope of the IP License would sound in the separate doctrine of collateral estoppel.  *Res judicata*, again also known as claim preclusion, "means that a final adjudication on the merits of an action 'precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *CBF Indústria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 241 (S.D.N.Y. 2023) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  Collateral estoppel, also known as issue preclusion, "differs from [*res judicata*], and 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'"  *Id.* (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).  Defendants, however, do not argue for dismissal on collateral estoppel grounds, nor do they contend that the doctrine should apply in this case.  The Court will not raise a collateral estoppel argument on Defendants' behalf, and expresses no view as to its applicability here.  *See Arizona v. California*, 530 U.S. 392, 412-13 (2000) ("Where no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication.").

**B.      Statutory Standing Under 15 U.S.C. § 1114(1)**

Katzoff and GFB argue that Plaintiffs "lack standing to bring an infringement action under the Lanham Act," as Plaintiffs are not "assignees" because they do not have an ownership interest in the Il Mulino IP through the IP License.  *See* Katzoff Motion at 6-8; GFB Motion at 6-8. Although Defendants' motions blend this argument with their *res judicata* argument, Defendants' Reply addresses the argument as a separate basis for dismissal of the Lanham Act claims, arguing that "all claims involving the Il Mulino trademarks must be dismissed for lack of standing" because "Plaintiffs have made no attempt to demonstrate they are anything more than a licensee."  Reply at 12.

While Defendants purport to move under both Rule 12(b)(1) and Rule 12(b)(6), this argument appeals to the issue of statutory standing.  "Statutory standing . . . refers to a nonjurisdictional inquiry that does not implicate 'the court's statutory or constitutional *power* to adjudicate the case.'"  *Evolution Fast Food One, LP v. HVFG, LLC*, 720 F. Supp. 3d 251, 260 (S.D.N.Y. 2024) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).  "Instead, it concerns whether a plaintiff 'has a cause of action under the statute.'"  *Id.* (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)). "Therefore, a lack of statutory standing requires dismissal for failure to state a claim, while [a] lack of Article III standing requires dismissal for lack of subject matter jurisdiction."  *Id.* (emphasis and internal quotation marks omitted).

Plaintiffs' trademark infringement claims are brought under 15 U.S.C. § 1114(1).  "In the context of trademark infringement claims, § 1114(1) grants [statutory] standing to the owner or registrant of the relevant trademarks."  *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187 (RA), 2013 WL 4400532, at *8 (S.D.N.Y. Aug. 15, 2013).  A "registrant" includes all "legal

representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C.

§ 1127. "In other words, only registrants—as statutorily defined—have 'statutory standing'" to

bring Plaintiffs' claim, and therefore Plaintiffs must plausibly allege that they meet that definition

to successfully state a Lanham Act claim under Section 1114(1). *Fed. Treasury Enter.*

*Sojuzplodoimport v. SPI Spirits, Ltd.* ("*Fed. Treasury*"), 726 F.3d 62, 72 (2d Cir. 2013).[4]

In opposing dismissal, Plaintiffs heavily rely on their allegation that they are an "exclusive

licensee" to support the contention that they qualify as a registrant for the purposes of

Section 1114(1). Opposition at 19-20. The case on which Plaintiffs primarily rely for this

proposition, *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283, 293 (S.D.N.Y.

2010), did hold that an exclusive licensee has statutory standing to assert a Section 1114(1) claim.

But three years after that case was decided, the Second Circuit in *Federal Treasury* rejected

*Telebrands*'s premise that exclusive licensee status is sufficient to establish statutory standing. *See*

*Fed. Treasury*, 726 F.3d at 77-78. Instead, an exclusive licensee must "show that its 'license'

amounts, in fact, to an assignment to establish entitlement to sue under [Section 1114(1)]." *Id.* at

78.

"At least two requisites are inherent in the concept of assignment under the [Lanham] Act:

(1) the need for the relevant assigning document to be effected 'by instrument[] in writing duly

executed'; and (2) the need for the assignment to transfer an ownership interest in the marks at

issue." *Id.* at 73 (alteration in original) (quoting 15 U.S.C. § 1060(a)(3)). While the parties do not

brief these issues in detail, Defendants argue for dismissal because Plaintiffs "cannot establish they

---

[4] Plaintiffs' unfair competition and false designation of origin claims are brought under 15 U.S.C. § 1125(a)(1), which "allows suits 'by *any person* who believes that he or she is or is likely to be damaged' by the defendant's actions." *Fed. Treasury*, 726 F.3d at 72 (quoting 15 U.S.C. § 1125(a)(1)). Defendants only argue for dismissal of Plaintiffs' Section 1114(a) claims on statutory standing grounds. *See* Katzoff Motion at 6-7; GFB Motion at 6-7; Reply at 9-10.

hold the required 'ownership interest in the marks at issue.'"  Reply at 12 (quoting *Fed. Treasury*, 726 F.3d at 73).

The Court concludes that Plaintiffs sufficiently allege their ownership interest in the marks at issue to survive dismissal.  As reviewed in *Federal Treasury*, the Second Circuit has "accepted that a transfer of an ownership interest in a mark is a predicate to [statutory] standing for any putative 'assign,'" and has looked to "whether the plaintiff had functionally been assigned the mark at issue" in the language of an agreement to determine this issue.  726 F.3d at 76.  Although the Second Circuit in *Federal Treasury* did not "precisely delineate the bundle of rights that a trademark assignment must extend to a purported assignee to support the latter's [statutory] standing to bring a [Section 1114(1)] suit," the decision suggests that issues like the owner's residual "operational interest" in the marks after the purported transfer of rights are relevant to this analysis.  *Id.* at 75-76.

*Federal Treasury* reserved judgment on whether a court "may find a trademark assignment effective to confer standing where the assignment reserves certain rights in the assignor."  *Id.* at 77.  A leading treatise in this area notes that "a partial or limited assignment is inconsistent with the modern definition of an assignment as an outright sale of all rights in the mark," but acknowledges that "[o]ne early and pre-Lanham Act case indicated that an assignment can be valid even though it reserved limited rights of use of the mark in the assignor."  5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:8 (5th ed. 2025).  As *Federal Treasury* did not adopt a *per se* rule against statutory standing in cases of partial assignment, the Second Circuit apparently does not fully adopt this modern approach.  Rather, the issue is whether IM Asset Co had "functionally been assigned the mark at issue" through the IP License.  *Fed. Treasury*, 726 F.3d at 76.  This requires an examination of the IP License's terms.

As alleged in the Complaint, the IP License provides IM Asset Co with "an exclusive, perpetual, and royalty-free 'right and license to use the Il Mulino Intellectual Property in connection with Restaurants and the development, manufacture, sale and distribution of products throughout the World pursuant to the terms of the License.'"  Compl. ¶ 44 (alterations adopted). The IP License "also grants IM Asset Co the exclusive right to 'transfer, sublicense and/or assign all or part of the rights granted by the IP License to a third party without the consent of Licensor.'" *Id.* ¶ 47 (alterations adopted).  Moreover, the IP License "expressly provides that 'Licensor IM-I shall have no right to use, license, assign or transfer the Il Mulino Intellectual Property.'"  *Id.* ¶ 48 (alterations adopted).  The IP License also authorizes IM Asset Co to "take action or institute proceedings with respect to [instances of known or suspected] infringement," after notifying IM-I of such infringement and in the event IM-I fails to diligently prosecute that infringement.  *Id.* ¶ 48 n.11 (internal quotation marks omitted).  Finally, the IP License "further provides that 'no change, amendment or modification shall be valid unless set forth in a written instrument signed by both parties.'"  *Id.* (alterations adopted).

As pleaded, the IP License is more restrictive on the grantor's subsequent rights than was true of the grantor in *Federal Treasury*.  There, the grantor had retained title, the right to rescind the trademark, and the right to license it and to exclude others from the mark, leading the Second Circuit to hold that "too many rights remain with the [grantor] for it to be deemed to have 'assigned' the [m]arks to" the plaintiff.  726 F.3d at 76.  In contrast, as alleged, the IP License grants IM Asset Co an exclusive right to transfer or assign the rights without IM-I's consent; restricts IM-I's right to use, license, assign, or transfer the Il Mulino IP; and provides a non-exclusive enforcement right to IM Asset Co.  Without the full terms of the IP License before the Court, and absent more developed briefing from the parties on this issue, the Court concludes that

these terms are sufficient at the pleading stage to "find a trademark assignment effective to confer [statutory] standing where the assignment reserves certain rights in the assignor," *id.* at 77, while mindful that the parties may adduce additional evidence such that this conclusion changes once this case proceeds to summary judgment or trial.

## C.    Claims Against Defendants Arising at Locations They Did Not Operate

GFB argues that Count 5 should be dismissed against it "to the extent it pertains to alleged infringement occurring at Il Giglio [Tribeca]," because the Complaint does not allege GFB is involved in operations at that location.  GFB Motion at 4.  W3H similarly argues that the claims in Counts 5, 7, and 8 should be dismissed "to the extent that they pertain to alleged infringement occurring at [Il Mulino West 3rd Street]," due to the lack of allegations that W3H is involved in operations at that location.  W3H Motion at 4; *see* Reply at 15-16 (repeating these arguments for dismissal).  Plaintiffs do not address these arguments, and GFB and W3H are correct that the Complaint does not include allegations of their involvement in the operation or infringement allegedly occurring at the respective restaurants.  The Court therefore dismisses Count 5 against GFB to the extent it pertains to alleged infringement occurring at Il Giglio Tribeca, and dismisses Counts 5, 7, and 8 against W3H to the extent that they pertain to alleged infringement occurring at Il Mulino West 3rd Street.  *See Iqbal*, 556 U.S. at 678 (explaining that a complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## D.    W3P's Ripeness Challenge

W3P contends that all claims against it (Counts 1, 2, 5, 9, 10, and 11) should be dismissed for lack of ripeness.  W3P Motion at 6-7; *see also* Reply at 17-18.  W3P understates the allegations made against it.  The Complaint alleges that W3P was set up as "a corporate vehicle to improperly

transfer Il Mulino Tribeca's intellectual and personal property to," Compl. ¶ 10; *see id.* ¶ 124, that, upon information and belief, W3P "is involved in the operation of [Il Giglio Tribeca]," *id.* ¶ 26, and that in September 2023, IMNY GS did "transfer[] all rights and interest in the Il Mulino Tribeca Personal Property to West 3rd Holdings and/or West 3rd Products," *id.* ¶ 261. Accepting "as true all material factual allegations of the complaint" and drawing "all reasonable inferences in favor of the plaintiff," these allegations "affirmatively and plausibly suggest that the plaintiff has standing to sue" because they plausibly allege that W3P has already involved itself in the misfeasance at issue. *Carter*, 822 F.3d at 56-57 (alterations adopted; internal quotation marks omitted); *see New England Carpenters Guar. Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 51 (2d Cir. 2023) ("[G]eneral factual allegations of injury may suffice to establish standing, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." (internal quotation marks omitted)). While W3P may consider these allegations "groundless," W3P Motion at 5, the proper mechanism to test the factual bases for such allegations is through a motion for summary judgment or at trial.

E.    **W3P's Challenge to the "Information and Belief" Allegations**

W3P additionally argues that Plaintiffs' allegations against it based upon "information and belief" are insufficient because the Complaint lacks "'a statement of facts upon which the belief is founded.'" W3P Motion at 5 (quoting *Somerville v. Major Expl., Inc.*, 576 F. Supp. 902, 909 (S.D.N.Y. 1983)); *see* Reply at 16-17. This is incorrect. *Somerville* discussed the requirement for pleading upon information and belief in the context of the heightened pleading standard of Federal Rule of Civil Procedure 9(b). 576 F. Supp. at 909 ("A complaint based upon information and belief survives a motion to dismiss under Rule 9(b) so long as the pleading includes a statement of facts upon which the belief is founded."). But for a complaint pleaded under Rule 8, *Twombly*'s

plausibility standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted).

Both of these conditions are satisfied here. W3P's involvement in both the transfer of the Il Mulino IP and the operation of Il Giglio Tribeca—that is, its precise role in the alleged scheme perpetrated by the web of interrelated Defendant LLCs—would be facts "peculiarly within the possession and control of" W3P and the other Defendants. *See Moraes v. White*, 571 F. Supp. 3d 77, 103-04 (S.D.N.Y. 2021) (finding allegations pleaded on information and belief sufficient where the plaintiff's "overall factual allegations" provided a factual basis for the assertion pleaded and additional supporting facts "will be developed in discovery"); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 7568 (PGG), 2018 WL 4735717, at *7 (S.D.N.Y. Sept. 29, 2018) (collecting cases holding the peculiar control standard satisfied where "the complaint pled facts that made it clear why the [defendants] were likely to know" the underlying facts).

Moreover, other facts pleaded in the Complaint "makes the inference of [W3P's] culpability plausible." *Arista Records*, 604 F.3d at 120. Namely, the Complaint alleges that Katzoff registered W3P to do business in New York and holds an interest in the company, Compl. ¶¶ 10, 23, and simultaneously alleges a number of facts concerning how Katzoff has operated a web of LLCs in an effort to infringe the Il Mulino IP. Compounded with the fact that W3P's name (West 3rd Products) is itself an allusion to the Il Mulino West 3rd Street location, there is a plausible inference that W3P is involved in Defendants' purportedly infringing activities regarding the Il Mulino IP. Accordingly, the Complaint alleges a sufficient factual basis such that there is a

"reasonable expectation that discovery will reveal evidence of illegality." *Arista Records*, 604 F.3d at 120 (alteration adopted) (quoting *Twombly*, 550 U.S. at 556); *see Mott v. Cnty. of Monroe*, No. 20 Civ. 6809 (FPG), 2021 WL 2042623, at *4 (W.D.N.Y. May 21, 2021) (allowing a pleading on information and belief to proceed where the facts pleaded made the allegation "plausible" and observing that "[d]iscovery will ferret out whether there are any facts to support these specific allegations and, if not, the [claims] can be disposed of on summary judgment after minimal discovery").

## F.    Supplemental Jurisdiction

All Defendants except GFB argue that the Court lacks supplemental jurisdiction over certain of the Complaint's state law claims. *See* Katzoff Motion at 8-10 (arguing the Court lacks supplemental jurisdiction over Counts 9, 10, 11, 12, and 13); W3H Motion at 6-9 (same for Counts 9, 10, and 11); W3P Motion at 7-9 (same); IM-I Motion at 3-4 (same for Counts 5 and 6); IMNY GS Motion at 2-4 (same for Counts 11 and 14).

Where a district court has original jurisdiction, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy where they derive from a "common nucleus of operative fact." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Thus, in determining whether to exercise supplemental jurisdiction, courts "have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (alterations

adopted, internal quotation marks omitted). A basis for the exercise of supplemental jurisdiction is "lacking when the federal and state claims rest[] on essentially unrelated facts." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

Two of the state law causes of action directly relate to the trademark claims, insofar as they are asserting both infringement and breach of the IP License due to allegedly infringing activities. Count 5 states a claim for common law infringement of the Il Mulino IP at both Il Mulino West 3rd Street and Il Giglio Tribeca after the expiration of the GFB license. Compl. ¶¶ 197-204. Count 6 states a claim for breach of the IP License against IM-I for permitting GFB and W3H to use the Il Mulino IP at these locations, despite the IP License restricting IM-I's ability to further license the Il Mulino IP. *Id.* ¶¶ 205-215. Each of these claims rests on facts which "substantially overlap[]" with the Lanham Act claims, and therefore the Court may properly exercise supplemental jurisdiction over them. *Achtman*, 464 F.3d at 335.

IM-I argues that "it cannot be disputed that the federal claims brought in the Complaint are completely unrelated to the state law claims against [IM-I] because Plaintiffs have not brought any of their Lanham Act claims against [IM-I]." IM-I Motion at 3-4 (emphasis omitted). This is not a basis for denying supplemental jurisdiction. Under 28 U.S.C. § 1367(a), courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." This jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Supplemental jurisdiction therefore "applies where the state law claim in question arises out of the same set of facts that give rise to an anchoring federal question claim." *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000). Because supplemental jurisdiction exists over the related state law claims, it is proper to join IM-I as an additional party. *See Oladokun v. Ryan*, No.

06 Civ. 2330 (KMW), 2011 WL 4471882, at *11 (S.D.N.Y. Sept. 27, 2011) ("Allowing some parties, against whom only state law claims lie, to be dismissed, while allowing other parties, against whom federal claims lie, to remain in federal court, would defeat the purpose of the mandatory conferral of supplemental jurisdiction for the joinder or intervention of additional parties, and, more generally, would leave cases with a common nucleus of operative facts split between federal and state courts."). For these same reasons, IMNY GS's identical argument for dismissing the state law claims against it is unavailing. *See* IMNY GS Motion at 3 (arguing that Plaintiffs "have not brought any of their Lanham Act claims against [IMNY GS]" (emphasis omitted)).

Five of the other challenged causes of action arise from facts surrounding the alleged transfer of personal property from Il Mulino Tribeca to Il Giglio Tribeca. Count 9 states a claim for conversion regarding Defendants' acquisition of the personal property previously used in the operation of Il Mulino Tribeca. Compl. ¶¶ 241-247. Count 10 states a claim for unjust enrichment from the wrongful possession of that personal property. *Id.* ¶¶ 248-255. Count 11 alleges the transaction transferring the personal property to W3H and W3P is a voidable transaction under New York Debtor and Creditor Law Sections 273, 274, and 276. *Id.* ¶¶ 256-266. Count 12 claims that Katzoff breached his fiduciary duty to IM Joint Ventures by causing IMNY GS to take actions that were to its own detriment and the detriment of its members. *Id.* ¶¶ 267-274. Count 13 similarly alleges a faithless servant claim against Katzoff regarding the performance of his duties and position of control over IMNY GS, including actions which "culminated in the September 2023" transfer of property. *Id.* ¶¶ 275-282. The federal claims, which are alleged in Counts 1 through 4, relate to Defendants' use of trademarks and trade dress after Il Giglio Tribeca's opening and the expiration of the GFB License.

Defendants argue that Plaintiffs' state law claims rest on facts unrelated to the federal claims and therefore supplemental jurisdiction is lacking. Not so. As is evident from the Court's Opinion and Order on Plaintiffs' motion for a preliminary injunction, the history of the parties' relationship and context of the transactions—upon which the state law claims are premised—are highly relevant to the disposition of Plaintiffs' Lanham Act claims. *See Asset Co IM Rest*, 2024 WL 167333, at *9 (comparing Il Mulino Tribeca's trade dress to Il Giglio Tribeca's trade dress and the "proximity of the products"); *id.* at *10 (analyzing the requirement of bad faith, and noting that "the striking similarities between Il Giglio's and Il Mulino Tribeca's décor may well illustrate copying, particularly given the fact that Defendants acknowledged that some of Il Mulino Tribeca's property was carried over"); *id.* at *14 (discussing bad faith in the context of claims surrounding the Il Mulino trademarks and explaining that "Katzoff, in particular, likely knew about the relationship between the old Il Giglio and the Il Mulino brand, given . . . Katzoff's intimate knowledge of the Il Mulino brand more generally"); *id.* at *15 (noting Plaintiffs' contention that Katzoff "hired chefs for Il Giglio Tribeca and had them train in the kitchen at Il Mulino West 3rd Street"); *id.* at *17 ("[P]arts of the Complaint appear to suggest that monetary damages could make Plaintiffs whole with regard to the Il Mulino Tribeca Personal Property, and the Court cannot discern any reason why such damages would not suffice to cover Plaintiffs' alleged loss.").

As the preliminary injunction Opinion demonstrates, the factual base that will be implicated in resolving Plaintiffs' federal claims is quite a bit broader than Defendants suggest. Considering the element of bad faith would, for example, draw in a large swath of evidence regarding Defendants' actions "that occurred *before* the alleged infringement." W3P Motion at 9. And as is clear from the Court's Opinion, "that some of Il Mulino Tribeca's property was carried

over" from Il Mulino Tribeca to Il Giglio Tribeca is pertinent to the disposition of the federal claims. *Asset Co IM Rest*, 2024 WL 167333, at *10.

Defendants argue that "Plaintiffs make no attempt to explain how the transfer of physical property, of which they are claiming monetary damages, [is] related to their federal trademark infringement claims beyond their grand 'scheme' allegation." Reply at 14. Yet, taking this example to task, it is easy to see how the transfer of physical property could rest on the same facts underlying the federal trademark claims. If Plaintiffs can show that (1) distinct black-and-white photographs existed at Il Mulino Tribeca, (2) those photographs were improperly transferred to Defendants, and (3) Defendants then used those photographs at Il Giglio Tribeca, there is a direct line between Il Mulino Tribeca's trade dress and Il Giglio Tribeca's trade dress: they are using the same artwork to decorate the two restaurants. On this basis, the "federal claim[s] necessarily br[ing] the facts underlying the state claim[s] before the court," making the exercise of supplemental jurisdiction appropriate. *Achtman*, 464 F.3d at 335 (internal quotation marks omitted).

Defendants' lone cited authority is unpersuasive. In *MDB LLC v. Hussain*, the court declined to exercise supplemental jurisdiction over state law counterclaims where the "sole federal claim hinge[d] upon whether [the counterclaim-plaintiff] suffered any compensable damages following the dissolution of the parties' business relationship by virtue of [the counterclaim-defendant's] use of the [trademark]." No. 14 Civ. 9281 (VEC), 2016 WL 1267793, at *12 (S.D.N.Y. Mar. 29, 2016). Because the proposed state counterclaims related only "to the financial relationship between [the parties] during the course of their informal business partnership," the state law and federal damages claims arose out of unrelated time periods, and thus unrelated facts. *Id.* at *11-12. While the court's analysis in *MDB* did intimate that the temporal distinction between

these claims was relevant to the supplemental jurisdiction inquiry, its analysis did not find that factor dispositive but instead looked to the relation between the relevant factual bases for each claim. *See id.* at *12. As just explained, the facts underlying the state and federal law claims in this case overlap significantly, rendering *MDB* inapposite.

In contrast, Plaintiffs' authority more closely aligns with the facts at hand. In *BLT Restaurant Group LLC v. Tourondel*, the court found Lanham Act claims regarding aspects of a restaurant menu sufficient to establish supplemental jurisdiction over state law claims arising from the defendant's prior departure from the plaintiff's business. 855 F. Supp. 2d 4, 11-13 (S.D.N.Y. 2012). In rejecting a challenge to supplemental jurisdiction, the *BLT* court explained that the "pertinent analysis . . . does not depend upon a diagrammatic abstracting of the bare elements of the federal claim in order to define the minimum theoretically necessary evidence to prove or disprove the claim." *Id.* at 11. Instead, courts "look to whether the evidence likely to be used in the specific case in addressing the federal claim is likely to substantially overlap that used to address the state-law claims." *Id.*

In *BLT*, "all of the claims ar[o]se from, and w[ould] invite substantial proof concerning, two broad areas of historical fact—the parties' initial conjoining of their efforts to create a series of particularly styled restaurants and then [the defendant's] departure and alleged use of his knowledge of the [restaurant's] business operation—including menus, recipes and promotional activities—to compete with, and supposedly injure, plaintiff's business." *Id.* The court noted "it is to be expected that the entire context of the parties' original relationship and the events leading to, and following, the breach would be offered in evidence even if the federal claim were the only one being litigated here." *Id.*

So too here. The context of the parties' relationship, the events leading to the closing of Il Mulino Tribeca, the transfer of its property, and the opening of Il Giglio Tribeca are implicated in both the state and federal law claims. Thus, "it cannot be seriously questioned (1) that there will be substantial overlap of facts and evidence presented on the federal and state claims and (2) that in this context plaintiff would surely be expected to litigate these claims in one suit." *Id.* at 11-12; *see Montefiore Med. Ctr.*, 642 F.3d at 332 (explaining that the exercise of supplemental jurisdiction is appropriate where the state and federal law claims are such that "the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding'" (quoting *Gibbs*, 383 U.S. at 725)).

For these same reasons, IMNY GS's argument contesting supplemental jurisdiction over Count 14 fails. IMNY GS Motion at 3-4. While it is true that the breach of promissory note claim has a more tenuous relationship to the federal claims than the other state law claims, resolution of Count 14 would still implicate a substantially similar factual basis as the federal claims. As was the case with *BLT*, resolving the breach of promissory note claim would implicate issues of "historical fact," including the "entire context of the parties' original relationship and the events leading to . . . the breach," which would necessarily "be offered in evidence even if the federal claim were the only one being litigated here." 855 F. Supp. 2d at 11. Moreover, this claim may implicate facts concerning what occurred during the wind-down of Il Mulino Tribeca and whether Defendants were involved in transferring that restaurant's assets to other entities in an effort to start a new, purportedly infringing restaurant, rather than using those assets for the repayment of creditors. *See* Compl. ¶¶ 10, 256-266, 283-292.

Additionally, the statutory grounds for declination of supplemental jurisdiction are not implicated by Count 14. *See* 28 U.S.C. § 1367(c)(1)-(4). The claim is neither "novel" nor would

it "substantially predominate[]" over the federal claims at issue. *Id.* The "familiar factors of judicial economy, convenience, fairness, and comity" support supplemental jurisdiction over this claim as well. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Given the number of parties involved in this matter, their complex history and relationship, and the relative simplicity of the claim for breach of promissory note, the factors of judicial economy and convenience weigh in favor of exercising supplemental jurisdiction. *See Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (explaining that to evaluate judicial economy, courts consider "their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation," while convenience asks "whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction"). In addition, the Court sees neither resulting prejudice nor an implicated comity interest from its adjudication of this claim. *See id.* As such, the exercise of supplemental jurisdiction over Count 14 is warranted.

Because the facts necessary to adjudicate Plaintiffs' state law claims substantially overlap with those necessary to resolve the Lanham Act claims, the Court denies Defendants' motions to dismiss Plaintiffs' state law claims for lack of supplemental jurisdiction.

## G.    Specificity of Complaint

All six Defendants argue that re-pleading is warranted because the claims brought are vague and ambiguous. *See* Katzoff Motion at 10-11; GFB Motion at 8-9; W3H Motion at 9-10; W3P Motion at 9-10; IM-I Motion at 4-5; IMNY GS Motion at 4-5; *see also* Reply at 18-20. This argument stems from the Complaint's repeated allegations regarding the conduct of "Defendants" in the plural, without specifying any individual Defendant, and the minimal number of specific references to each Defendant's actions.

Rule 12(e) "is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Roche Freedman LLP v. Cyrulnik*, No. 21 Civ. 1746 (JGK), 2023 WL 2663648, at *9 (S.D.N.Y. Mar. 28, 2023) (internal quotation marks omitted). "A Rule 12(e) motion is not granted lightly." *Adidas Am., Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 157 (S.D.N.Y. 2022). "For a more definite statement to be warranted, the complaint must be so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 10900 (ER), 2022 WL 955945, at *4 (S.D.N.Y. Mar. 30, 2022) (internal quotation marks omitted).

Here, the Complaint is not so "unintelligible" as to require a more definite statement. The header of each cause of action specifies which Defendant or Defendants are named. *See*, *e.g.*, Compl. ¶¶ 158-68 (naming Katzoff, W3H, and W3P as "Defendants" for Count 1). The ability of the Court to create the above chart of the Complaint's causes of action, *see supra* at I.B, undercuts each Defendant's argument that "[it] cannot reasonably respond to the Complaint as it does not know what it is alleged to have done." IMNY GS Motion at 5; *accord, e.g.*, IM-I Motion at 5. Moreover, the Court's determination that the Complaint largely survives the Defendants' Rule 12(b)(6) challenges motivates the conclusion that a more definite pleading is not necessary. *Cf. Lee v. Karaoke City*, No. 18 Civ. 3895 (PAE), 2020 WL 5105176, at *10 (S.D.N.Y. Aug. 31, 2020) ("[A] Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a)." (internal quotation marks omitted)).

In sum, the Complaint is not "so excessively vague and ambiguous as to be unintelligible," nor does the Court see how the Complaint, as drafted, would "prejudice [each] defendant seriously in attempting to answer it." *Akridge*, 2022 WL 955945, at *4 (internal quotation marks omitted). In the event any Defendant requires more specificity, that is an issue which discovery is apt to

handle. *See Lee*, 2020 WL 5105176, at *10 ("The tools of discovery, rather than compelling a more definite statement from [the plaintiff], are the proper avenue for defendants to flesh out [the plaintiff's] contentions."). Defendants' motions for relief under Rule 12(e) therefore are denied.

## IV.  Conclusion

For the foregoing reasons, the Court grants GFB's motion to dismiss Count 5 to the extent it pertains to alleged infringement occurring at Il Giglio Tribeca and grants W3H's motion to dismiss Counts 5, 7, and 8 to the extent that they pertain to alleged infringement occurring at Il Mulino West 3rd Street. Defendants' motions are otherwise denied. Defendants shall answer the Complaint within two weeks of the date of this Opinion and Order. The Clerk of Court is respectfully requested to close the motions pending at Docket Numbers 93, 95, 97, 99, 101, and 103.

SO ORDERED.

Dated:  March 26, 2025
       New York, New York

JOHN P. CRONAN
United States District Judge